```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

PLANET BEACH FRANCHISING                       CIVIL ACTION
CORPORATION

VERSUS                                         NO: 07-9359

RANDY RICHEY                                   SECTION: R(5)
```

### ORDER AND REASONS

Before the Court is defendant Randy Richey's motion to compel arbitration. For the following reasons, the Court GRANTS defendant's motion.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This diversity action arises out of a failed franchise relationship.  Plaintiff Planet Beach Corporation, a Louisiana corporation with its principal place of business in Marrero, Louisiana, is a nationwide franchisor of tanning salons. Defendant Randy Richey, a Virginia citizen, owned and operated a Planet Beach franchise in Centreville, Virginia.  Planet Beach

brings the following claims against Richey: (1) breach of the franchise agreement and an accounting; (2) breach of the covenant not to compete in the franchise agreement; and (3) trademark infringement and unfair competition.  Planet Beach seeks overdue payments of franchise fees on its breach of contract claim, preliminary and permanent injunctive relief, as well as treble damages under 15 U.S.C. § 1117 on its trademark infringement and unfair competition claim, and preliminary and permanent injunctive relief on its breach of the covenant not to compete claim. (*See* R. Doc. 4.)  Richey now moves to compel arbitration under 9 U.S.C. § 3 or, alternatively, to stay this matter pending arbitration.

    A.    **The Franchise Agreement**

On April 21, 2003, Richey and Planet Beach entered into a franchise agreement. (*See* Franchise Agreement (FA), R. Doc. 4-2.) Under the terms of the agreement, Richey acquired the rights to operate a Planet Beach tanning salon for ten years. In addition to allowing Richey to use the Planet Beach name and its planetary and solar system-themed logos, Planet Beach promised to provide marketing and a host of business support services to Richey's franchise. (*Id.* § 10.)  In exchange, Richey agreed to pay to Planet Beach an initial franchising fee, monthly royalties and marketing fees based on his franchise's monthly profits, and

fixed monthly information technology fees. (*Id.* § 12.)  Richey also had to fulfill various monthly business reporting requirements. (*Id.* § 17.)

The agreement granted Richey a non-exclusive license to use Planet Beach's proprietary marks. (*Id.* § 13.) The franchise agreement provided that Richey's license to utilize Planet Beach's marks "shall automatically cease upon termination or expiration" of the agreement. (*Id.* § 13.1).  And Richey agreed that he would not "either during or after the term of [the agreement], do anything, or assist any other person to do anything, which would infringe upon, harm or contest Planet Beach's rights in any of the Proprietary Marks." (*Id.* § 13.2.)

In addition, the franchise agreement included a covenant not to compete. (*Id.* § 20.)  Richey agreed not to engage in any other tanning salon businesses during the term of the agreement, except for other Planet Beach franchises. (*Id.* § 20.1).  And he agreed not to operate any other tanning salons either at the location of his franchise or within other specified geographic areas for two years following termination or expiration of the franchise agreement. (*Id.* § 20.2.)

Like many franchise agreements, the contract between Planet Beach and Richey contained a sweeping arbitration clause.  The parties agreed to the following:

3

> All disputes and claims relating to this Agreement or any other agreement entered into between the parties, the rights and obligations of the parties, or any other claims or causes of action relating to the making, interpretation, or performance of either party under this Agreement, shall be settled by arbitration . . . in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The right and duty of the parties to this Agreement to resolve any disputes by arbitration shall be governed by the Federal Arbitration Act, as amended. . . . If the claim, or counterclaim, is for $10,000 or more, the matter shall be heard before a panel of three (3) arbitrators and each party shall appoint its own arbitrator, and the appointed arbitrator shall appoint a "neutral" arbitrator from the AAA's list of arbitrators.

(*Id.* § 26.4.) The parties further agreed that nothing in the franchise agreement would prevent Planet Beach from seeking injunctive relief before the filing of any arbitration proceeding. (*Id.* § 26.6.)

B.  **The Arbitration Proceedings**

At some point in September 2006, Richey filed a demand for arbitration against Planet Beach with the AAA.  Richey alleged that Planet Beach had fraudulently induced him to enter the franchise agreement and that it had breached the agreement.  On September 23, 2006, Planet Beach answered Richey's claims in arbitration and filed its own counterclaims.  Planet Beach called for an accounting and brought claims for breach of the franchise agreement or, alternatively, conversion.  Specifically, Planet Beach alleged that Richey failed to pay monthly royalties, submit business reports, and upgrade computer software, and refused to

4

allow Planet Beach to fulfill its obligations as franchisor, all in violation of the agreement. (*See* Planet Beach's Arbitration Answer and Counterclaim at ¶¶ 12-20, R. Doc. 14-2 at 27-28.)

In accordance with the terms of the franchise agreement, Richey and Planet Beach selected one arbitrator each. Richey and Planet Beach selected, respectively, Frank Simoneaux and Leopold Sher, who in turn selected Leon Rittenberg to round out the three-member panel. Richey objected to Planet Beach's selection of Sher as an arbitrator, asserting that Sher was not among the individuals approved by the AAA to arbitrate the parties' dispute. Richey also raised concerns about the impartiality of Sher because of Sher's relationship with a former Planet Beach employee/director, John Dart. The AAA required Sher to make a supplemental disclosure and gave the parties until May 15, 2007 to make any additional objections. Richey did not timely object but sought to hold the arbitration in abeyance while the parties tried to effect a settlement.

The parties were unable to resolve their dispute amicably. The arbitration panel was formed, including Sher. Richey again objected to Planet Beach's chosen arbitrator, claiming Sher had a conflict of interest. He also objected to the scheduling of a hearing on November 5, 2007, which was then only two months away. On October 2, 2007, Richey formally withdrew his arbitration

claim, citing insufficient time for his counsel to prepare for the hearing and the conflict of interest of Planet Beach's chosen arbitrator. On October 29, 2007, the AAA determined that Planet Beach's chosen arbitrator should be removed from the panel. (*See* Exhibit B, R. Doc. 6-2). By that time, however, Richey had already withdrawn his claim. The AAA then dismissed the arbitration altogether on December 6, 2007. (*See* Exhibit C, R. Doc. 6-2). Richey did not pay his share of the arbitration fees. It is not clear whether Planet Beach paid its share.

On December 6, 2007, the same day that the AAA dismissed the arbitration, Planet Beach filed this lawsuit. It brings a claim for breach of contract and accounting, similar to the one it brought as part of its arbitration counterclaim. Planet Beach alleges that Richey breached the franchise agreement by failing to file business reports and pay franchise fees. It also brings new claims for trademark infringement and unfair competition, and it claims that Richey is in breach of the covenant not to compete. (After Richey's relationship with Planet Beach fizzled, he opened a new tanning salon in the same location as his franchise known simply as "The Beach Tanning Salon.") Richey now moves to compel arbitration of Planet Beach's claims or, alternatively, to stay this action pending arbitration.

**II.   LEGAL STANDARD**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, expresses a strong federal policy in favor of enforcing arbitration agreements. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005).  Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration.*

9 U.S.C. § 3 (emphasis added).  The Supreme Court has explained that the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218.  Further, "any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer*, 422 F.3d at 294.

To determine whether to compel the parties to arbitrate, the

Court must complete a two-step inquiry. *Id.* at 293. First, the Court must determine whether the parties agreed to arbitrate the disputes in question. *Id.* This determination involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* Second, if the Court determines that the parties have agreed to arbitrate the dispute in question, it "then must determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

## III. DISCUSSION

No one disputes that Planet Beach's claims against Richey are subject to arbitration. Planet Beach acknowledges that the franchise agreement contains a comprehensive arbitration provision providing that "*all* disputes and claims relating" to the franchise agreement shall be subject to arbitration. Therefore, the Court finds that Planet Beach's claims arise out of the franchise agreement and are within the scope of the arbitration agreement. Thus the only issue here is whether Richey, as the party moving to compel arbitration, is "in default in proceeding with such arbitration."

Planet Beach argues that Richey cannot compel arbitration since he previously defaulted in arbitration. Plaintiff also contends that Richey waived his right to arbitration when he withdrew from the previous proceedings. Courts analyze the relevant clause in 9 U.S.C. § 3 using a variety of terms, including "default," "waiver," and "forfeiture." The terms waiver and forfeiture arise most frequently in cases in which a court considers whether a party has waived its right to arbitrate through litigation conduct. Despite their use of different terms, courts analyze this point in essentially the same way. *See Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1365 n.16 (11th Cir. 1995) (citing 3 Fed. Proc., L.Ed. *Arbitration* § 4:24 (1981)) (noting that although the statute uses the term default, "the case law on the subject employs the term waiver" and that default and waiver have been construed as analogous in the context of 9 U.S.C. § 3); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995) (equating "a waiver of the right to arbitrate with a 'default in proceeding with such arbitration' under § 3") (citing *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 412 (2d Cir. 1959)); *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966) (explaining that a party can waive his right to arbitrate by actively participating in a lawsuit or

otherwise taking action inconsistent with arbitral rights and that when a party waives his right to arbitrate, he "is necessarily 'in default in proceeding with such arbitration'"). Indeed, one court has described the different terms as "a distinction without a difference insofar as the end result is conduct . . ., which led to filing a lawsuit." *JPD, Inc. v. Chronimed Holdings, Inc.*, No. 2:07-cv-646, 2007 WL 3244206 at *5 (S.D. Ohio Nov. 2, 2007). Thus the Court will consider plaintiff's two contentions — that Richey defaulted in arbitration and that Richey waived his right to arbitration — as one.

Establishing a waiver requires a "heavy burden" of proof. *See Subway Equip. Leasing Corp. v. Forte*, 169 F.3d, 324, 326 (5th Cir. 1999); *Price v. Drexel*, 791 F.2d 1156, 1158 (5th Cir. 1986). Federal policy strongly favors arbitration of disputes. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). As the Supreme Court has stated, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself *or an allegation of waiver, delay, or a like defense to arbitrability*." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983).

Therefore, there is a presumption against finding a waiver of arbitration. *Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1164 (5th Cir. 1987); *Miller Brewing Co. V. Ft. Worth Distrib. Co.*, 781 F.2d 494, 496 (5th Cir. 1986). The Federal Arbitration Act does not define what it means for party to be in default, but the Fifth Circuit has explained that such a determination must be made on the peculiar facts of each case. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004); *Valero Refining, Inc. v. M/T Labuerhorn*, 813 F.2d 60, 65 (5th Cir. 1987).

Based on the facts of this case, the Court finds that Richey did not default and waive his contractual right to arbitration. Although Richey withdrew from the earlier arbitration proceeding, he did so only after objecting to the participation of Planet Beach's chosen arbitrator on the three-member arbitration panel. The AAA later determined that the arbitrator selected by Planet Beach should be removed from the panel. Although Richey's withdrawal from the arbitration proceeding certainly delayed resolution of the parties' dispute, the AAA's determination that Planet Beach's arbitrator should not participate in the dispute resolution process validated Richey's concerns about the integrity of the arbitration process.

Planet Beach has not shown that Richey's withdrawal caused

it any prejudice.  "[F]or purposes of a waiver of an arbitration agreement: prejudice refers to the inherent unfairness in terms of delay, expenses, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Republic Ins. Co.*, 383 F.3d at 346 (5th Cir. 2004) (quotations omitted).  The Fifth Circuit has recognized that engaging in pretrial discovery of arbitrable claims, engaging in pretrial motion practice concerning arbitrable issues, and failing to timely assert the right to arbitration are factors to consider in determining whether a party seeking arbitration has caused prejudice to the opposing party. *See id.*  Here, Richey has not engaged in any such pretrial activity and filed his motion to compel shortly after Planet Beach commenced this litigation.  Further, Planet Beach's argument that Richey's earlier withdrawal has prejudiced its efforts to protect its trademark rights is without merit.  There is no indication, and Planet Beach does not contend, that it raised any claims concerning its trademarks or the covenant not to compete during the course of the earlier arbitration.  To claim that Richey's withdrawal from the earlier arbitration proceedings caused prejudice to Planet Beach's trademark rights mischaracterizes the subject matter of those proceedings.  The issues of trademark infringement and breach of the covenant not

to compete were not at issue in the earlier arbitration.  Again, a party waives his right to arbitration when he "substantially invokes the judicial process to the detriment or prejudice of the other party," and he only "invokes the judicial process to the extent [he] litigates a specific claim [that he] subsequently seeks to arbitrate." *Id.* at 344.  Therefore, Planet Beach cannot claim prejudice as to those issues.

The cases on which Planet Beach relies in support of its argument that Richey waived his arbitration rights are inapposite in this context.  In *Kulukundis Shipping Co., S/A v. Amtorg Trading Corp.*, 126 F.2d 978 (2d Cir. 1942), the issue before the court was whether a defendant could seek to enforce an arbitration clause in a contract that it had entirely repudiated. The plaintiff in that case had not sought to enter into arbitration but instead brought its claims directly in federal court. In interpreting the meaning of "default" in 9 U.S.C. § 3, the Second Circuit observed in *dicta* that a party in default would be "a party who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced." *Id.* at 989.  In *Kulukundis*, however, the issue was whether the defendant could plead that it had never entered into a contract with the plaintiff and alternatively rely on the arbitration provision in

the same disputed contract. *Kulukundis* does not present a scenario even remotely close to the facts of this case. Therefore, its broad observation in *dicta* about the activity that might constitute default provides little guidance on whether Richey is in default in the context of this case.

In *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197 (9th Cir. 2003), the Ninth Circuit affirmed the district court's order denying defendant's motion to compel arbitration after the defendant had failed to pay the costs of an earlier arbitration. In that case, the plaintiff sued his employer for breach of his employment contract, and the district court stayed the case because the employment contract contained an arbitration clause. The parties agreed that the defendant-employer would pay the costs of arbitration by a certain date. The defendant, however, failed to pay the arbitration fees because of an alleged lack of funds and did not inform the plaintiff or the arbitrator before the payment deadline that it could not do so. The arbitrator then cancelled the arbitration and entered an order that the defendant was in default. After the plaintiff moved to lift the stay of the litigation and for default judgment, the defendant filed a new motion to compel arbitration, claiming that it had obtained the necessary funds to pay for arbitration. The district court denied the defendant's motion to compel arbitration,

finding that it had waived its arbitration rights and ordered the case to proceed to trial. In affirming the district court's finding of default, the Ninth Circuit pointed out that the defendant, although aware of its payment deadlines, "gave no prior notice that it would be unable to pay . . . [and] did not present any evidence that at the time payment was due in the arbitration, [it] made genuine efforts to make alternate payment arrangements." *Id.* at 1199.

This case is distinguishable from the situation presented in *Sink*. Here, Richey withdrew from the arbitration more than a month before the scheduled hearing date because of his objection to the fitness of Planet Beach's chosen arbitrator and the aggressive arbitration hearing schedule that the challenged panel had established. Unlike the defendant in *Sink* that kept quiet about its alleged lack of funds, Richey voiced his objections early in the arbitration process. Moreover, his objections apparently had merit because the AAA ultimately concluded that Planet Beach's arbitrator should not participate in the dispute resolution process. Significantly, Planet Beach does not even address the effect of the flawed composition of the arbitration panel on whether Richey was in default. Further, it cites no other authority that provides a rationale for finding that Richey is in default, and the Court has found none. And unlike the

15

situation in *Sink*, there is no indication here that the AAA has found Richey in default.

Richey's conduct is not indicative of a party who acts inconsistently with his right to arbitrate by frustrating or delaying the arbitration process only later to attempt to avail himself of the very process that he undermined.  On the contrary, it is Richey who initiated arbitration in the first instance. Further, the AAA's eventual conclusion that Planet Beach's arbitrator should not participate weighs strongly in favor of finding that Richey is not in default.  For these reasons and because Planet Beach has failed to identify any factually analogous authority that supports a finding of waiver, the Court finds that Planet Beach has not carried its heavy burden of showing that Richey waived his arbitration rights.  Therefore, in light of the comprehensive arbitration provision and the strong federal policy favoring enforcement of arbitration agreements, the Court stays these proceedings and orders the parties to arbitrate Planet Beach's claims.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to compel arbitration and ORDERS the parties to initiate arbitration proceedings within 30 days of the entry of this order. IT IS FURTHER ORDERED that all proceedings in this case

are HEREBY STAYED pending the outcome of arbitration.

New Orleans, Louisiana, this 25th day of June, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE